*408 OPINION OF THE COURT
Frank M. Klinger, J.
This case presents some unique questions of law pertaining to the recently enacted CPL 530.12 (8) and (11).
In this case, the defendant was arraigned on April 8, 1986 on two serious charges, the felony of burglary in the second degree and also assault in the third degree. It was alleged that the defendant, armed with a baseball bat, unlawfully entered the residence of his wife Carolyn Stevens who allegedly had an order of protection from Family Court, broke the door open and choked and physically assaulted one Edward J. Scruton who was then and there present and threatened to kill his wife Carolyn Stevens and their children by setting the place on fire.
The defendant was arraigned before this court, bail was set at $5,000 and a transcript of the arraignment reveals that the defendant was informed verbally that an order of protection was being entered. This court informed the defendant that he was to have absolutely no contact whatsoever with Carolyn Stevens and to stay completely away from her residence and place of employment. He was further told that if he returned to that residence or bothered Carolyn Stevens that he would go to jail. He was admonished that he was not to go anywhere near her and that if he had any problems with regard to his family, he was to go to Family Court. On August 21, 1986 the District Attorney refused the defendant a preliminary hearing and he was released on his own recognizance.
On the 5th day of September 1986, the defendant was charged with criminal contempt in the second degree, resisting arrest, two counts of disorderly conduct and escape in the second degree arising out of an incident in which he is alleged to have returned to the home of Carolyn Stevens and their children.
This court ordered a hearing pursuant to CPL 530.12 (8) and (11).
At this hearing, only one witness testified. Carolyn Stevens stated that on the date and time in question the defendant knocked on the door of her house and asked to see their son. She locked the door and called the police. He remained in front of her house and called her several specified obscene and derogatory names. No further witnesses were called by the prosecutor or the defense and no proof was presented on the record that the defendant had ever been served with the order *409 of protection. The prosecutor did not request any transcript of the testimony at the April 8, 1986 arraignment nor did the prosecutor ask the court to take judicial notice of such proceedings.
However, the record does indicate that prior to presentation of the proof Mr. Grose, the prosecutor, did ask "does Mr. McGrath and the defendant waive a reading of the accusatory instrument as well as the Order of Protection promulgated by this Court and attached to the accusatory?” The record does not indicate an answer on the part of Mr. McGrath, but rather a request by Mr. McGrath that any potential witnesses be excused.
The prosecutor introduced no other proof that the order of protection was in fact "issued” to the defendant. Defense counsel contends that the issuing of the order of protection is in fact an essential element of the prosecutor’s proof, which precludes a finding of willful violation.
Three basic questions presented are: First, whether CPL 530.12 (8) and (11) require complete proof of all of the elements of those sections by the prosecutor according to standards of proof normally required in contested trials or whether a lesser standard may be acceptable. Second, may the court for purposes of such a hearing take judicial notice of its own records and procedures and a transcript of a previous hearing, even without specific request by a party that it do so? Third, is there a conflict between CPL 180.80 which required R.O.R. for the defendant when the District Attorney refused the preliminary hearing and CPL 530.12 which provides that he may be committed to jail for a violation of the order of protection?
There is no question that if this were a jury trial on the misdemeanor charge of criminal contempt in the second degree that the proof would have to establish all the elements of that charge. The prosecutor would have had to request as part of his proof that the court take judicial notice of its prior proceedings, introduce a transcript of the same, call witnesses and/or in some other manner establish the salient facts as to the existence of the order of protection and the defendant’s knowledge of it. Here, the prosecutor did make such a request that the court take notice of its own orders and proceedings in response to defense counsel’s motion at the close of proof, but this was of course after the "proof’ had been closed and the parties had rested.
*410 If we may take judicial notice of our own records, we would note that while orders of protection are routinely mailed by the clerk to complainant and defendant, and the court had no reason to doubt that this was done in this case, there is no written proof in the file that the order of protection was in fact mailed to this defendant.
Thus, we rebound to the simple question: How stringent must we be in holding the prosecutor to his burden of proof for this particular hearing? Must he prove beyond a reasonable doubt or even by the preponderance of the evidence, each and every element stated in CPL 530.12 (8) and (11)? A simple reading of those two subdivisions might lead one to that conclusion.
However, upon reflection, I believe it is clear that such an interpretation is incorrect. It would be highly unrealistic to take technicalities so as to speak from the sublime to the ridiculous — unless required by the statute.
The hearing we have held essentially is not a trial on the merits to determine the defendant’s guilt or innocence, for which the prosecutor would be duty bound to prove all of the elements of the crime from beginning to end and for which of course the finder of fact should not take judicial notice of matters unless so requested as part of the proof. The remedies set forth under subdivision (11) (a) through (d) make it clear that the hearing is essentially one concerning bail — either its issuance or denial.
Although one does not of course wish to minimize the significance of such a determination to the defendant, the fact of the matter is that it seems clear from a reading of the remainder of the Criminal Procedure Law that full-fledged hearings and proof for which a prosecutor must dot every "i” and cross every "t” or else have his case dismissed are in no way required for hearings concerning bail.
For example, the question of bail is considered for virtually every defendant who is arraigned. The criteria for making that determination are set forth in CPL 510.30 (2). Certainly both prosecutor and defendant are entitled to comment upon the criteria so stated and it is apparent from the case law that upon request a full adversary hearing is required. (People v Terrell, 62 Misc 2d 673 [County Ct, Monroe County 1970]; People v Bach, 61 Misc 2d 630 [County Ct, Dutchess County 1970]; People v Derisi, 110 Misc 2d 718 [Dist Ct, Suffolk County 1981].)
*411 We cannot learn directly from these cases or any that I can find how stringent we must be in terms of the laws of evidence in the holding of such a hearing — keeping in mind that although a very fundamental right of the defendant, that of his liberty is at stake, such a hearing is not an adjudication of guilt or innocence. In fact, particularly when, as here, we are dealing with a felony, bail is in any event discretionary. This defendant, for example, charged with two felonies, has no absolute right to bail, even if he were not accused of violating an order of protection. Interestingly, per Terrell (supra), the burden of proof at a bail hearing in general is upon the defendant. Admittedly, under CPL 530.12 (11) the burden seems clearly to be upon the prosecutor. However, if the burden of proof is upon the defendant in any bail case — then surely customary rules as to technical proof by the prosecutor are not applicable to bail hearings.
For example, CPL 510.30 lists as a criterion, and it is undoubtedly a very important one, the defendant’s previous record, if any, in responding to court appearances when required.
Suppose the prosecutor produces a "rap sheet” indicating that the defendant had failed to appear in another court when required, resulting in a warrant being issued? Is the rap sheet sufficient? Must the prosecutor produce the warrant? Is that sufficient? Must he produce the Judge or the clerk who issued the warrant? If so, must the proof conclusively indicate that the defendant was personally informed of the date of his missed court appearance — so that we can be certain that he was willfully in default? If so, must the District Attorney produce the stenographer of the other court for this bail hearing?
Considering that scenario it seems manifest to me that it would be unrealistic to say the least to insist that the prosecutor literally prove every alleged element of the statute by trial standards on a bail hearing or a hearing for a violation of an order of protection, where the outcome at worst for the defendant would result in the bail to which he has no absolute right in any event being revoked.
Moreover, even if such literal compliance is required, I am not sure that it has not been met here. CPL 530.12 (11) states that:
"If a defendant is brought before the court for failure to obey any lawful order issued under this section and if, after *412 hearing, the court is satisfied by competent proof that the defendant has willfully failed to obey any such order, the court may:
"(a) revoke an order of recognizance or bail and commit the defendant to custody”.
There is not much question that the defendant has been brought before the court for failure to obey a lawful order of the court. Was the order in fact "issued”? The defendant wishes to stand upon that technicality — so let us look at it technically. Technically the order certainly was "issued”. It’s in the court file. The complainant had her copy. The police had their copy. Indeed, the defendant never denied receiving it. The order certainly was issued. The prosecutor failed to prove that the order was issued "to the defendant”, although it may well have been.
Thus, if one must be technical, however, this lawful order was certainly "issued” — even though the prosecutor did not prove that it was issued to the defendant. (Even if a court clerk had as part of the prosecutor’s case sworn that she mailed the order to the defendant, the defense counsel could still raise the same issue if the defendant were to have testified that he didn’t get it. Of course, the defendant never testified at the hearing that he did not receive it — he did not testify at all.)
The defendant’s right to due process is certainly maintained by the dispositive clause of subdivision (11), namely, the question of whether the court is satisfied by competent proof that the defendant willfully failed to obey such order. In order to prove willfulness, there must be proof that the defendant was either served with the order or informed, preferably on the record, as to its substance. To find willfulness, we must of course take judicial notice of our own records, but I don’t think anyone can seriously argue that on a hearing as to bail a court cannot consider its own records without someone "proving” them to us. For example, if upon considering bail for a defendant, records indicated a failure to appear here for trial three years ago, the court must of course take notice of that fact. It would be absurd for the court to require the prosecutor to prove its own court records to the court. Here, the transcript of the April 6 hearing shows that this defendant was clearly informed on the record that an order of protection was in effect, that he was to stay completely away from Carolyn Stevens and that if he did not do so he would be *413 in violation and would go to jail. The defendant’s actions as testified to by the only sworn witness indicate a willful violation of this court’s order.
We note that the primary purpose of local court proceedings on felony complaints is in any event to hold the defendant for action in County Court. The defendant had and has a right to bail review in County Court even before the Grand Jury renders its report, which I gather is imminent.
The fact that the District Attorney had previously refused a preliminary hearing creates a question as to the interpretation of a possible conflict of two sections of the CPL. CPL 180.80 requires that the defendant be released on his own recognizance under such situation, as he in fact was. Really, there is no conflict since CPL 530.12 (1) states that even though the defendant has been released upon his own recognizance, an order of protection may be issued and if he violates it (subds [8], [11]), the court may then "revoke an order of recognizance * * * and commit the defendant to custody”. (CPL 530.12 [11] [a].)
There is, therefore, no question that we can revoke the bail and we in fact have already done so. However, in view of the points raised and the length of time defendant has been incarcerated, I will reconsider the question of whether I should continue the revocation of the defendant’s bail, set new bail or R.O.R. the defendant. The matter is set down for Tuesday, September 23, 1986, at 9:00 a.m.