OPINION OF THE COURT
Louise Gruner-Gans, J.
On June 24, 1988, defendant Milton Forman was excluded from his home by the terms of a temporary order of protection issued pursuant to CPL 530.12 (1) (a). He contends that this temporary order of protection was issued without affording him an opportunity to be heard, and that the procedures and lack of standards for the issuance of temporary orders of protection pursuant to CPL 530.12 (1) and (1) (a) violate Federal constitutional due process requirements.
CPL 530.12 (1) provides that in a criminal action "involving a complaint charging any crime or violation between spouses, parent and child, or between members of the same family or household, as defined in [CPL] section 530.11 * * * the court * * * may issue a temporary order of protection as a condition of any order of recognizance or bail”. According to CPL 530.12 (1), such a temporary order of protection (TOP) may require the defendant,
"(a) to stay away from the home, school, business or place of employment of the family or household member or of any designated witness;
"(b) to permit a parent to visit the child at stated periods * * *
"(c) to abstain from offensive conduct against the child or against the family or household member or against any person to whom custody of the child is awarded;
"(d) to refrain from acts of commission or omission that tend to make the home not a proper place for the family or household member.”
The statute, since amended by Laws of 1988 (ch 702), does not specify a standard or list criteria on the basis of which a court is to determine whether a temporary order of protection should issue.
*117 FACTUAL AND PROCEDURAL HISTORY
Defendant Milton Forman and complainant Barbara For-man are husband and wife. Immediately prior to his arrest, defendant and his wife were staying in separate cooperative apartments, each jointly owned by them, in the same apartment building in Manhattan. The larger of the two apartments was the couple’s marital home, while the smaller served as the wife’s office. As a consequence of severe marital conflict between them, the wife was temporarily sleeping in her office, but had access to the larger apartment during the day. The defendant husband continued to occupy and sleep in the larger apartment.
Defendant was arrested on June 24, 1988 and charged with assault in the third degree (Penal Law § 120.00), and with harassment (Penal Law § 240.25), on the complaint of his wife. According to the June 24 complaint of Police Officer Graves, corroborated by Barbara Forman on the same day, defendant, with intent to cause physical injury and to harass and annoy his wife, had punched her in the face and knocked out one of her teeth. The alleged assault and harassment occurred after the wife had returned to sleep in the larger apartment and refused to let the husband in.
At his arraignment on June 24, 1988, defendant was represented by counsel, and with the consent of the People was released on his own recognizance. At the arraignment, the People requested, and the court issued, a temporary order of protection, effective until July 17, 1988, unless further extended by the court. No argument was heard, or testimony presented, either in support of or in opposition to the issuance of the TOP. The temporary order of protection, issued on the officially prescribed form used for this purpose in the Criminal Court for the City of New York ("Form no. 2 [Family Offense-Temporary Order of Protection]”), directed defendant as follows: (a) to stay away from the home, school, business or place of employment of Barbara Forman; (c) to abstain from offensive conduct against Barbara Forman; and (d) to refrain from acts of omission or commission that tend to make the home not a proper place for Barbara Forman.
The effect of this temporary order of protection was to exclude the defendant from both of the couple’s apartments, since one was arguably the complainant’s home and the other her office.
On June 26, 1988, two days after defendant’s arrest, Bar *118 bora Forman informed the police that defendant had threatened her with violence over the telephone and that she had a temporary order of protection. The police sought to arrest the defendant for violation of the TOP, but apparently, following negotiations with defendant’s counsel, they agreed to desist while defendant litigated the legality of such an arrest and of the underlying order of protection.
On July 13, 1988, defendant and his counsel appeared in Part AP 3 of this court and orally requested that the TOP be modified to allow the defendant access to one of the two apartments. The application was denied with leave to renew in writing. A new TOP was issued, without a hearing, on the same terms as previously, and made effective until August 1, 1988, unless extended by the court. On July 15, 1988, by order to show cause returnable on July 26, 1988, defendant moved to vacate the TOP as based on insufficient evidence and issued in violation of due process of law. Additionally, and alternatively, defendant moved for a hearing pursuant to CPL 510.20 to vacate the TOP as a condition of his recognizance. While this motion was pending, on July 18, 1988, defendant sought and was denied review of the TOP in the Supreme Court, New York County, on the ground that CPL 530.30 did not authorize such review.
On July 20, 1988, the defendant’s written motion was disposed of by stipulation. The People and the defendant agreed in writing that a hearing would be held to determine defendant’s claim "that an Order of Protection should not have been issued in this case and that the police do not have probable cause to arrest me [the defendant] for violation of that Order of Protection.” On July 26, 1988 the stipulation was approved by the Presiding Judge and the hearing was scheduled for August 1, 1988.
The hearing was held before this court. Consistent with the stipulation, testimony was limited to the question whether there was sufficient evidence to justify the issuance of a TOP as of June 24, 1988, and whether there was a current basis for its continuation. Although called for by the stipulation, no evidence was taken at the hearing to determine whether there was probable cause to arrest the defendant for violation of the TOP. Instead, with the defendant’s consent, the People filed a "Superseding Amendment” to the information charging the defendant with criminal contempt in the second degree (Penal Law § 215.50 [3]). The new count alleged that on June 26, in violation of the June 24 temporary order of protection, the *119 defendant telephoned his wife and told her that he had a gun and was coming to see her. The provision of the temporary order of protection allegedly violated by the defendant was that which required him "to abstain from offensive conduct against Barbara Forman.”
At the conclusion of the hearing, on August 4, 1988, this court orally ruled that the evidence supported the issuance of the initial TOP on June 24, 1988, and issued a new temporary order of protection excluding defendant from only one of the two apartments owned by him jointly with his wife. Decision was reserved on all issues of law. The parties agreed that defendant’s constitutional challenge to CPL 530.12 would also be treated as a motion to dismiss the added charge of criminal contempt in the second degree (Penal Law § 215.50 [3]).
By an order, without opinion, dated April 28, 1989, this court withdrew its August 4, 1988 oral decision that there was on June 24, 1988 a sufficient basis for the issuance of a TOP; adhered to its decision to issue a new temporary order of protection; denied defendant’s motion to vacate the June 24, 1988 temporary order of protection on constitutional grounds; and dismissed the charge of criminal contempt in the second degree (Penal Law § 215.50 [3]). This amended order and decision supplements the order issued on April 28, 1989.
SCOPE OF HEARING HELD TO REVIEW ISSUANCE OF TOP
The stipulation pursuant to which the hearing before this court was held was based on a fundamental misconception. The TOP of June 24, 1988 was issued as a condition of defendant’s release on his own recognizance. (CPL 530.12, 510.20, 510.30 [2] [a].) A fundamental principle of the law governing securing orders is that a Judge may not review a determination of bail or recognizance made by a Judge of coordinate jurisdiction nunc pro tune, and may only modify such a determination prospectively on the basis of new facts adduced. (People ex rel. Manceri v Doherty, 192 NYS2d 140, 142 [1959]; People v Gruttola, 72 Misc 2d 295 [Crim Ct, NY County 1972].) To the extent the stipulation between the People and defendant provided for nunc pro tune review of the June 24, 1988 determination of the arraigning Judge, it was invalid. This court’s decision, pursuant to the stipulation, that there was a sufficient factual basis for issuance of the June 24, 1988 TOP, must therefore be withdrawn.
The issue properly presented at the hearing held before this *120 court pursuant to CPL 510.20 was whether, subject to defendant’s constitutional challenge, there was a sufficient evidentiary basis for the continuance of the June 24 TOP. On this issue, there was substantial evidence presented at the hearing to support the continuation of a temporary order of protection excluding the defendant from the marital apartment.[1]
The complainant Barbara Forman testified credibly that on June 24, 1988 the defendant punched her in the mouth, knocking out one of her front teeth, that the defendant had a history of violent conduct, including specifically, an incident in May 1987 during which defendant shoved her into a wall injuring her elbow, and an altercation in October 1987 when defendant knocked complainant to the floor, causing her to break an ankle, forced her to walk on the broken ankle and then threw books at her. The complainant wife had previously initiated and then abandoned a family offense proceeding in the Family Court (Family Ct Act art 8) and for a time had a temporary order of protection from that court. Defendant presented no witnesses at the hearing, and did not persuasively impeach complainant’s credibility through cross-examination. Complainant also swore to the allegations of the "Superseding Amendment” to the information that two days after the initial TOP was issued by the Criminal Court, the defendant telephoned her and told her that he had a gun and was coming to see her. All this evidence established that there was a substantial danger of intimidation or injury to the complainant and supported the issuance of a new TOP on August 4, 1988. This court adheres to its initial determination on this point.
STANDING AND MOOTNESS
Before defendant’s constitutional attack on CPL 530.12 (1) and (1) (a) may be addressed, defendant must overcome certain prudential objections raised by the People to the court’s consideration of the constitutional questions presented by him.
*121 The People contend that defendant lacks standing to raise constitutional objections to the temporary order of protection of June 24, 1988, and to the statute authorizing its issuance (CPL 530.12 [1]). They argue that he has not been injured by a lack of due process in that no protected interest of his has been infringed, and, because, in any event, five weeks later he had the benefit of the hearing to which he claims he was entitled.
The People also assert that this controversy has become moot, because the temporary order of protection of June 24, 1988 has since been continued or replaced by subsequent orders.
The court agrees with the defendant that he has standing to maintain his constitutional defenses, and that he has presented a live dispute appropriate for adjudication.
In determining whether defendant has standing to raise his constitutional challenge, it must be shown that his "personal or property rights will be directly and specifically affected.” (Matter of Abrams v New York City Tr. Auth., 48 AD2d 69, 70 [1975], affd 39 NY2d 990 [1976].) In order to have standing to challenge a statute as unconstitutional, a defendant must demonstrate actual or threatened injury to a protected right (see, Duke Power Co. v Carolina Envtl. Study Group, 438 US 59 [1978]; People v Parker, 41 NY2d 21 [1976]; Matter of Donohue v Cornelius, 17 NY2d 390, 397 [1966]; People v Merolla, 9 NY2d 62 [1961]), and that he has been aggrieved by the unconstitutional feature of the statute (see, Ulster County Ct. v Allen, 442 US 140 [1979]; Oriental Blvd. Co. v Heller, 27 NY2d 212 [1970], appeal dismissed 401 US 986 [1971]; People v Beakes Dairy Co., 222 NY 416 [1918]).
Defendant’s liberty and property interests were and are restricted by each of the various temporary orders of protection issued against him. He presently faces criminal prosecution, now based in part on his violation of the order which he claims to be unconstitutional. Each of the temporary orders of protection restrict defendant’s liberty to go where he pleases— he may not go to the home, business or place of employment of his wife, as well as his associational liberty in relation to his wife. (Griswold v Connecticut, 381 US 479, 486 [1965]; Cooper v Morin, 49 NY2d 69, 80 [1979], cert denied sub nom. Lombard v Cooper, 446 US 984 [1980].) The orders also exclude him from real property in which defendant otherwise shares ownership and a right to possession. (People v Garland, 69 NY2d 144 [1987].)
*122 Finally, defendant’s liberty is threatened by the criminal proceedings for violation of the June 24, 1988 TOP, which proceedings are presently pending against him. The effect of the temporary orders of protection and of the authorizing statute (CPL 530.12 [1]) on defendant’s liberty and property interests could hardly be more direct and specific.
Although the temporary order of June 24, 1988 is no longer in effect, the controversy surrounding its issuance is not moot. Defendant currently faces prosecution for the violation of the order of June 24. In addition, the temporary nature of short-term orders may not be used to insulate them from legal challenge. A case will not be treated as moot where the problem presented is capable of repetition, typically evades review, and is novel and substantial. (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980].) The temporary order of protection issued in this case fits this pattern. Each year thousands of relatively short-lived temporary orders of protection, restricting the liberty and property of the accused, are and will be issued by the Criminal Courts of the City of New York. Since as a matter of practice a new TOP is issued on each adjourned date in a criminal proceeding, there is no opportunity to litigate a challenge to any one such order while it is still in effect. Moreover, habeas corpus is not available to review these TOPs where the defendant is not incarcerated. (People ex rel. Wilder v Markley, 26 NY2d 648 [1970]; People ex rel. Sutton v Glick, 38 AD2d 513 [1st Dept 1971]; People ex rel. Uqdah v New York State Bd. of Parole, 108 AD2d 888 [2d Dept 1985].) Last but not least, the question of the process that is due before or after such an order may be issued is a substantial one.
EXISTING PROCEDURES AND CRITERIA FOR THE ISSUANCE OF TEMPORARY ORDERS OF PROTECTION
According to defendant, CPL 530.12 (1) (a) offends the requirements of due process of law of the Fourteenth Amendment to the US Constitution in that it fails to provide an accused with an opportunity to be heard in opposition to the issuance of a temporary order of protection excluding him from his home, either prior or subsequent to its issuance, provides no criteria for the issuance of such a TOP, and does not require that the court issuing the TOP state its reasons on the record.
Defendant’s constitutional arguments must be assessed in *123 relation to the procedures and criteria for the issuance of TOPs pursuant to CPL 530.12 (1) as prescribed by New York statutes and case law. In the instant case, determining what those procedures and criteria are is itself an interpretive task, since they are nowhere set out in a coherent fashion. The court is required to interpret CPL 530.12 (1) (a), if possible, so as to preserve its constitutionality. (People v Epton, 19 NY2d 496, 505 [1967], cert denied 390 US 29 [1968]; McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]; Matter of Quinton A., 49 NY2d 328, 336 [1980].)
CPL 530.12 (1) itself does not prescribe the procedure to be followed when an application for TOP is made. However, CPL 510.20 (2) provides that whenever a court is required to issue a securing order, whether for recognizance or bail, a defendant "must be accorded an opportunity to be heard”. By the express terms of CPL 530.12 (1), as well as its statutory location in CPL article 530, the determination whether to issue a temporary order of protection is a part of the process of setting bail or recognizance. Reading CPL 530.12 (1) in tandem with CPL 510.20, it follows logically that the statutory right to be heard afforded by CPL 510.20 must be provided to a defendant with respect to the issuance of a TOP as well as to the literal fixing of bail or recognizance.
There is surprisingly little authority concerning the nature of a defendant’s opportunity to be heard pursuant to CPL 510.20. According to People v Stevens (133 Misc 2d 407 [City Ct, Oswego County 1986]) and People v Torres (112 Misc 2d 145 [Sup Ct, NY County 1981]), an adversary evidentiary hearing is not required on an initial application for bail or recognizance.
At arraignment, in addition to the presentation of an accusatory instrument, defendant’s NYSID sheet and the report of the Criminal Justice Agency, a hearing on an initial application for bail or recognizance pursuant to CPL 510.20 customarily consists of the presentation of facts and legal argument by prosecution and defense counsel, and counsel’s responses to questioning by the court. Sufficient facts must be presented to enable the court to make a determination "on the basis of available information” (CPL 510.30 [2] [a]), taking into account the criteria enumerated in CPL 510.30 (2) (a). (People ex rel. Ryan v Infante, 108 AD2d 987 [3d Dept 1985]; People v Stevens, 133 Misc 2d 407 [City Ct, Oswego County 1986], supra.) Thus, at defendant Forman’s arraignment, the People were required to make a presentation of facts and law to *124 support their application for a TOP excluding him from his home, and defendant, by counsel, was entitled to present facts and law in opposition to the application.
Following arraignment, numerous courts have held, relying on CPL 510.20, that when issues of fact are raised by a contested application for bail or recognizance, an evidentiary hearing on the issue must be scheduled either on the court’s initiative or on defendant’s request. (Matter of Buthy v Ward, 34 AD2d 884 [4th Dept 1970]; People v Stevens, 133 Misc 2d 407 [City Ct, Oswego County 1986], supra; People v Derisi, 110 Misc 2d 718 [Dist Ct, Suffolk County 1981]; People v Terrell, 62 Misc 2d 673 [Monroe County Ct 1970]; People v Bach, 61 Misc 2d 630 [Dutchess County Ct 1970]; see also, People ex rel. Singer v Corbett, 26 AD2d 770 [4th Dept 1966]; Becher v Dunston, 142 Misc 2d 103 [Sup Ct, Rensselaer County 1988]; People v Faieta, 109 Misc 2d 841 [Dist Ct, Nassau County 1981].) People v Derisi (supra) and People v Faieta (supra) both specifically held that defendant had the right to a postarraignment evidentiary hearing to contest the continuance of a previously issued TOP. People v Derisi (supra) characterized the hearing as one to modify a bail determination pursuant to CPL 510.20; People v Faieta (supra) described it as a hearing created pursuant to the inherent authority of the court.
The standard for the issuance of a temporary order of protection, while not provided by statute, may be derived from the common law as it is embodied in case law. (Cf., People ex rel. Shaw v Lombard, 95 Misc 2d 664 [Monroe County Ct 1978].) In the absence of a statutory standard, CPL 530.12 (1) must be read as incorporating the authority of a court entering a securing order (CPL 500.10 [5]), to prescribe conditions of bail or recognizance for the protection of threatened and intimidated witnesses. (Carbo v United States, 82 S Ct 662, 668 [1962]; People ex rel. Klein v Krueger, 25 NY2d 497 [1969]; People ex rel. Feldman v Warden, 48 AD2d 789 [1st Dept 1975], revd on other grounds sub nom. People ex rel. Weisenfeld v Warden, 37 NY2d 760 [1975].) This authority derives from the inherent power of a court to preserve the integrity of the judicial process. (Carbo v United States, supra; People ex rel. Calascione v Ramsden, 20 AD2d 142 [2d Dept 1963], affd 13 NY2d 1113 [1964].) The standard to be applied in determining whether to impose conditions of bail or recognizance for the protection of witnesses is whether there is a "danger of intimidation or injury.” (People ex rel. Klein v Krueger, 25 NY2d, supra, at 499 [1969].)
*125 The legislative history of CPL 530.12 demonstrates that a major purpose for its enactment was to enable the criminal court to protect victims of domestic violence from intimidation by the use of further violence and threats of violence. (Joint Assembly-Senate mem of Support, L 1977, ch 449.) Therefore, "danger of intimidation or injury” to complainant is the appropriate standard to be applied by a court considering an application for a TOP as a condition of bail or recognizance pursuant to CPL 530.12. There must be a " 'reasonable foundation’ ” for the court’s determination (People ex rel. Calascione v Ramsden, supra, 20 AD2d, at 148, affd 13 NY2d 1113 [1964]), and the reasons for the court’s determination should be stated or, at minimum, must be ascertainable from the record. (People ex rel. Shapiro v Keeper of City Prison, 290 NY 393, 398 [1943]; People ex rel. Lobell v McDonnell, 296 NY 109, 111-112 [1947]; People ex rel. Perez v Nevil, 45 AD2d 445, 446 [3d Dept 1974]; People ex rel. Rupoli v McDonnell, 277 App Div 74, 76 [2d Dept 1950].)
defendant’s constitutional challenge

(a) Right to a prior evidentiary hearing

Defendant claims that pursuant to the Fourteenth Amendment to the US Constitution an evidentiary hearing must be held before a TOP excluding a defendant from the home may issue. Although this claim was previously considered in People v Faieta (109 Misc 2d 841 [Dist Ct, Nassau County 1981], supra) and People v Derisi (110 Misc 2d 718 [Dist Ct, Suffolk County 1981], supra), a fuller discussion of the issues is appropriate to show why under current constitutional authority and the procedural safeguards provided by New York law defendant’s claim must be rejected.
Whenever State action deprives a citizen of his or her liberty or property due process requires that he or she be afforded the opportunity for a hearing. (Schall v Martin, 467 US 253 [1984]; Matthews v Eldridge, 424 US 319, 335 [1976]; Gerstein v Pugh, 420 US 103, 114 [1975]; Matter of Jones v Berman, 37 NY2d 42, 55 [1975]; Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 163 [1978].) The hearing must be provided " 'at a meaningful time and in a meaningful manner.’ ” (Matthews v Eldridge, supra, at 333, quoting Armstrong v Manzo, 380 US 545, 552 [1965].) Only in extraordinary situations may the hearing be postponed until after the deprivation has occurred. (Baddie v Connecticut, 401 US 371, 379 [1971]; *126 Fuentes v Shevin, 407 US 67, 82 [1972]; Sanford v Rockefeller, 35 NY2d 547 [1974], appeal dismissed sub nom. Collins v Carey, 421 US 973 [1975].) In the arrest and pretrial detention phase of criminal proceedings the Fourth Amendment likewise imposes hearing requirements as an aspect of fair procedure. (Gerstein v Pugh, 420 US, supra, at 111 [1975].) However, the requirements of due process and fair procedure are flexible as to the timing and formality of the hearing called for by the particular situation. (Morrissey v Brewer, 408 US 471, 481 [1972]; Gerstein v Pugh, supra, at 123.)
Certain factors have consistently been considered in evaluating the adequacy of procedures both under Due Process Clause of the Fourteenth Amendment and under the Fourth Amendment. Even where not formally designated as such, the factors outlined in Matthews v Eldridge (supra, at 335) are those most consistently relied upon: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.” (Compare, Gerstein v Pugh, 420 US 103, 113-114, 120-123 [1975], supra; Schall v Martin, 467 US 253, 263-268, 274 [1984], supra; Cleveland Bd. of Educ. v Loudermill, 470 US 532, 542-543 [1985].)
Applying those factors to the instant case, we turn first to the private interest affected. A temporary order of protection excluding defendant from the home is not an adjudication of title, and is not to be mistaken for a legal order of eviction pursuant to RPAPL article 7. Nevertheless, the interest affected here is the defendant’s use and enjoyment of his property interest in the home he owns jointly with his wife. (People v Garland, 69 NY2d 144 [1987].) Beyond its value as property, a person’s special interest in his/her home as an enclave of personal security and privacy has repeatedly been recognized under the Fourth and Fourteenth Amendments. (See, Griswold v Connecticut, 381 US 479, 486 [1965], supra; Stanley v Georgia, 394 US 557, 566 [1969]; Payton v New York, 445 US 573, 588-590, 601 [1980].) Being suddenly deprived of one’s home, even temporarily, is a traumatic experience.
Clearly, the property interest of the defendant affected by exclusion from the home pursuant to a temporary order of protection is a substantial one. Before defendant may be *127 deprived of such an interest permanently, or even temporarily, he is entitled to a hearing, unless extraordinary circumstances and an overriding State interest necessitate prompt action either without a hearing or without the appropriate evidentiary hearing until after the event. (Barry v Barchi, 443 US 55 [1979]; Gerstein v Pugh, 420 US 103, 113-114 [1975], supra; Mitchell v W. T. Grant Co., 416 US 600 [1974]; Morrissey v Brewer, 408 US 471 [1972], supra; Fuentes v Shevin, 407 US 67 [1972], supra; Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 163 [1978], supra; Matter of Harding v Melton, 67 AD2d 242 [3d Dept 1979], affd 49 NY2d 739 [1980], appeal dismissed 449 US 801 [1980]; Matter of Horodner v Fisher, 38 NY2d 680 [1976]; Sanford v Rockefeller, 35 NY2d 547 [1974], appeal dismissed sub nom. Collins v Carey, 421 US 973 [1975], supra; see also, Fhagen v Miller, 29 NY2d 348 [1972], cert denied 409 US 845 [1972].) Were no timely hearing available to defendant with respect to the TOP excluding him from his home, CPL 530.12 (1) (a) would indeed be unconstitutional.
The State’s interest in the issuance of temporary orders of protection pursuant to CPL 530.12 (1) and (1) (a) is also a significant one. Domestic violence has come to be recognized as a social scourge of the first order. (See, 1986 Report, Governor’s Commn on Domestic Violence, at 3-4; Report of New York Task Force on Women in the Courts, 15 Fordham Urban L J 1, 47.) Not only does the State have a strong interest in combatting domestic violence through criminal prosecutions, but that interest is severely undermined if victims of domestic violence are too frightened by further threats and acts of violence to participate in the criminal prosecution of their cases. Further, the State’s interest in combatting domestic violence through criminal prosecutions is closely linked to the interest of courts, as State instrumentalities, in protecting the integrity of judicial proceedings. The great potential for violence and intimidation which is present when both the victim and the perpetrator of domestic violence continue to live under the same roof is self-evident. Where danger of injury or intimidation to a complainant can be shown to exist, the device of a temporary order of protection excluding the accused from the home, and otherwise restraining victim harassment and intimidation, is indispensable to the maintenance of a criminal prosecution. Moreover, the State has an interest in the issuance of the TOP at the earliest possible time, since the danger of intimidation and injury to the complainant, if it exists, is an immediate one. In *128 a very real sense, the issuance of such a temporary order of protection as a condition of bail or recognizance at the time a defendant is arraigned is an emergency decision.
The risk of error in determining whether a TOP excluding a defendant from the home should be issued is clearly greater when the determination is based only on the documents and arguments of counsel available to the court at arraignment rather than on the testimony of live witnesses subject to cross-examination. The adversary process would better assist the court in making the crucial assessment of the complainant’s credibility, the extent of any injuries suffered and threats made, and the defendant’s history of violent behaviour toward the complainant and others.
Despite the strength of defendant’s constitutional interest, and the evident if unquantifiable risk of error, the emergency nature of the decision, as well as the practical difficulties inherent in convening an immediate evidentiary hearing, mitigate against the imposition of such hearings as constitutionally required before a TOP may first be issued at arraignment.[2]
The United States Supreme Court and the United States Court of Appeals for the Second Circuit have held that in the initial phase of criminal proceedings, the need for expeditious assumption of judicial control following a defendant’s arrest outweighs the need to minimize risk of error through adversary procedures. (Gerstein v Pugh, 420 US 103, 119-123 [1975], supra; Williams v Ward, 845 F2d 374 [2d Cir 1988]; cf., Morrissey v Brewer, 408 US 471, 484-487 [1972], supra.) Since in New York the probable cause hearing is combined with the determination of pretrial release (Williams v Ward, supra, at *129 375), the introduction of adversary procedures into the initial pretrial release determination would add significant delay to the already existing backlog. (Supra.)
Gerstein v Pugh (supra at 122, n 23) held that while a judicial probable cause determination was required to be made promptly following a defendant’s arrest, the probable cause hearing required by the Fourth Amendment need not be an adversary one, in part, because such hearings would "exacerbate the problem of pretrial delay.” In Williams v Ward, (supra), the Second Circuit ruled that pretrial detention of defendants of up to 72 hours without any intermediate probable cause hearing was constitutionally permissible under the Fourth and Fourteenth Amendments in light of the totality of processes afforded a defendant at arraignment in the New York City Criminal Court. These processes included a determination of probable cause, a determination of bail or recognizance and an opportunity for a final disposition, all with the assistance of counsel. The court concluded that the introduction of an earlier intermediate probable cause hearing in addition to the existing procedures would unduly burden the State’s ability to expedite arraignments for all defendants, and would be detrimental to defendants as a class. (Williams v Ward, 845 F2d, supra, at 386-389.)
The requirements of due process do entitle defendant to a prompt evidentiary hearing after the temporary order of protection excluding defendant from the home has been issued. (Barry v Barchi, 443 US 55 [1979], supra; Fuentes v Shevin, 407 US 67 [1972], supra; Jones v Berman, 37 NY2d 42 [1975], supra.) The importance of defendant’s interest in his home, the severity of the deprivation imposed through exclusion from the home, and, typically, the need to resolve conflicting issues of fact and credibility as to the underlying family conflict, require that a trial type hearing be provided. Presentation of witnesses and cross-examination are the most suitable means for assessment of veracity and credibility. (Matthews v Eldridge, 424 US, supra, at 343-344.)
The fact that defendant will ultimately have a full trial of the underlying charges against him "does not obviate the prompt hearing requirement” (People v Derisi, 110 Misc 2d 718 [Dist Ct, Suffolk County 1981], supra, citing Fuentes v Shevin, 407 US 67 [1972], supra). The time frames of the speedy trial requirements (CPL 30.30) are too long for exclusion from the home pursuant to CPL 530.12 (1) (a) to continue without an evidentiary hearing.
*130 Having reviewed the procedures which the Fourteenth and Fourth Amendments would require to support the issuance of a temporary order of protection excluding defendant from the home pursuant to CPL 530.12 (1) (a), I conclude that the requirements of procedural due process and of fundamental fairness must be considered satisfied by the procedural safeguards available under New York law. Before a temporary order of protection may be issued at arraignment (1) a probable cause determination must be made by a judicial officer, based on a verified complaint containing facts of an evidentiary character providing reasonable cause to believe that a crime has been committed (CPL 100.15 [3]; 100.40 [4]); (2) defendant is entitled to a presentation of reasons for the issuance of such a TOP by the People and through counsel to be heard in opposition to its issuance (CPL 530.12 [1]; 510.20); (3) before issuing such a TOP as a condition of bail or recognizance the court must be satisfied that there is a danger of injury or intimidation to the complainant; and (4) the defendant has a right to a prompt evidentiary hearing following the issuance of the TOP.
Schall v Martin (supra) also supports this court’s, conclusion. In Schall, the United States Supreme Court held that a New York Family Court procedure which permitted pretrial detention of juvenile offenders on the basis of a minimal initial detention hearing strikingly similar to the procedure for determining bail or recognizance in New York criminal cases, and which was followed by a prompt adversary evidentiary hearing, satisfied due process requirements.
The fact that the court, when issuing a TOP, is not statutorily mandated to state its findings of fact and conclusions of law on the record does not impair the constitutionality of CPL 530.12 (1) (a). Although a statement of such findings and conclusions is desirable, it is not constitutionally required in support of a bail determination, as long as the reasons for the determination are apparent from the record. (Finetti v Harris, 609 F2d 594 [2d Cir 1979] [State court’s bail decision not per se arbitrary or unconstitutional where court did not state reasons on the record, but record showed rational basis for denial of bail].)

(b) Inadequacy of Standard

According to defendant, the absence of a standard or of criteria for the issuance of a temporary order of protection makes the application of CPL 530.12 (1) and (1) (a) intrinsi *131 cally arbitrary and violative of due process. The judicially created standard for the issuance of a temporary order of protection excluding defendant from the home is whether there exists a "danger of intimidation or injury” to the complainant. (People ex rel. Klein v Krueger, 25 NY2d, supra, at 499.) This standard is not impermissibly arbitrary and vague under the Due Process Clause of the Fourteenth Amendment, as recently interpreted by the United States Supreme Court and the New York Court of Appeals. Both courts have sustained comparable standards requiring judicial prediction of future criminal conduct. These standards were found sufficiently explicit for Judges to apply in a consistent manner based on their training and qualifications as Judges. (United States v Salerno, 481 US 739, 742 [1987] [Federal statute permitting pretrial detention of defendant where no release conditions " 'will reasonably assure * * * the safety of any other person and the community’ ” held not violative of due process]; Schall v Martin, 467 US 253 [1984], supra; People ex rel. Wayburn v Schupf, 39 NY2d 682, 686 [1976] [provision of New York Family Court Act authorizing pretrial detention of juveniles on finding that " 'there is a serious risk that’ ” the juvenile " 'may * * * (commit) an act which if committed by an adult would constitute a crime’ ” held not arbitrary in both cases despite absence of statutory factors].) While conceding that there was an element of vagueness in any prediction of the probability of future criminal behaviour, the Court of Appeals in People ex rel. Wayburn v Schupf (39 NY2d 682, 690, supra) held that "[s]uch an element is necessarily present in the administration of any bail system, in the imposition of alternatively available sentences, in the administration of a parole system, or in any other procedure in which discretionary authority for differing criminal dispositions is vested in a court or an administrative body.”
The absence of criteria or factors which the court must consider in making its determination was held not to impair the constitutionality of the statutes at issue in United States v Salerno (supra), Schall v Martin (supra) and People ex rel. Wayburn v Schupf (supra). However, articulated statutory criteria enhance "the responsible exercise of * * * discretion”. (People v Beige, 41 NY2d 60, 62 [1976].) This court notes that subsequent to the entry of the TOP complained of here, effective November 1, 1988, CPL 530.12 (1) (a) was amended in part to list factors to be considered by the court in determining whether to issue a TOP excluding defendant from the *132 home (L 1988, ch 702). These factors include "conduct subject to prior orders of protection, prior incidents of abuse, past or present injury, threats, drug or alcohol abuse, and access to weapons”, and "whether the temporary order of protection is likely to achieve its purpose in the absence of * * * a condition” excluding defendant from the home. The specification of these factors should prove extremely helpful.[3]
DISMISSAL OF CRIMINAL CONTEMPT CHARGES
As noted earlier, defendant here has also been charged with criminal contempt in the second degree (Penal Law § 215.50 [3]). The charge of criminal contempt in the second degree (Penal Law § 215.50 [3]), added by the People’s "Superseding Amendment” to the information, is premised on defendant’s violation of the temporary order of protection issued at his arraignment on June 24, 1988. According to the People, the provision of the TOP violated by the defendant is paragraph (c), which requires him to "abstain from offensive conduct against Barbara Forman.”
Violation of this provision of the temporary order of protection cannot support a charge of criminal contempt. As a rule, the order of a court, no matter how erroneous, must be obeyed unless the issuing court lacks jurisdiction or the order is void on its face. (Ketchum v Edwards, 153 NY 534, 539 [1897]; State of New York v Congress of Racial Equality, 92 AD2d 815, 817 [1st Dept 1983].) It is equally well settled that to support a charge of criminal contempt there must be a clearly expressed and definite order of the court (Ketchum v Edwards, 153 NY 534 [1897], supra; Matter of Holtzman v Beatty, 97 AD2d 79 [2d Dept 1983]), and the contemnor must know of the order. (Matter of Holtzman v Beatty, supra.)
*133 When the terms of an order are vague and indefinite as to what actions are required of or prohibited to a party, he or she may not be adjudged in criminal contempt for failing to take the required action or for taking the prohibited action. (Matter of Holtzman v Beatty, supra; People v Balt, 34 AD2d 932 [1st Dept 1970]; Matter of Sheridan v Kennedy, 12 AD2d 332 [1st Dept 1961].)
Although these precedents were established with respect to judicial contempt (Judiciary Law § 750 [A]), and not with respect to penal contempt (Penal Law § 215.50 [3]), or its predecessor (Penal Law former § 600 [4]), I find that they apply with equal force to penal contempt. Both sections punish disobedience to a court’s lawful mandate. The rationale for requiring a clear and definite order applies equally to contempt under both statutes. Since punishment for contempt for violation of an order jeopardizes a contemnor’s liberty and property, as a matter of fundamental fairness such punishment should not be imposed unless the person affected had notice of what the order proscribes or requires. (Matter of Carlson v Podeyn, 12 AD2d 810, 811 [2d Dept 1961].)
The elements of the two forms of contempt are essentially the same, despite the procedural differences which exist between judicial contempt and penal contempt proceedings. (See, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 215.50, at 577-578; People v Colombo, 31 NY2d 947 [1972].) While the Penal Law criminalizes intentional disobedience or resistance and the Judiciary Law proscribes willful disobedience, the terms intentional and willful are treated as interchangeable in the cases. (See, People v Williamson, 136 AD2d 497 [1st Dept 1988]; Matter of Sheridan v Kennedy, 12 AD2d 332 [1st Dept 1961], supra.)
The court concludes that a prosecution for criminal contempt under the Penal Law is subject to the same requirement of clarity and precision as a contempt proceeding under the Judiciary Law. When measured against that standard, the portion of the temporary order of protection directing defendant Forman to "refrain from offensive conduct” must be held not subject to enforcement or sanction pursuant to Penal Law § 215.50 (3).
When the Legislature promulgated CPL 530.12 (1) (a), it was intended that the new section be read together with the existing law governing the enforcement of judicial orders. "A statute must be read in connection with the common law *134 existing at the time [of its enactment. I]f the common law rule and the statute can stand together, the statute will be construed so as to effectuate both, and should not be so construed as to abolish the common-law rule.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [b].) Under this principle of statutory construction, the provision of CPL 530.12 (1) (a) authorizing the court issuing a TOP to direct a defendant to "refrain from offensive conduct,” must be read to require that the particular "offensive conduct” prohibited be spelled out in the order. This was not done here. The portion of the temporary order of protection of June 24, 1988 prohibiting "offensive conduct” is totally lacking in specificity.
Accordingly, defendant Milton Forman cannot be prosecuted for criminal contempt in the second degree (Penal Law § 215.50 [3]) for alleged violation of paragraph (b) of the temporary order of protection of June 24, 1988, and that count must be dismissed. The dismissal is without prejudice to the filing of charges of aggravated harassment in the second degree (Penal Law § 240.30.)

. At the hearing the court found that the People had actually supported the continuation of the TOP excluding defendant from his home by a preponderance of the evidence. However, the court does not determine in this case whether a finding of a danger of intimidation or injury to complainant need only have reasonable factual support in the record, as in the case of other determinations relating to bail or recognizance (People ex rel. Klein v Krueger, 25 NY 497, 501 [1969]), or, whether a higher evidentiary standard is required under the Fourteenth Amendment to support defendant’s continued exclusion from his home. Although initially raised in defendant’s moving papers, this issue was never briefed by defendant.

. In Bellamy v Judges & Justices (41 AD2d 196 [1st Dept 1973], affd without opn 32 NY2d 886, remittitur amended 33 NY2d 632 [1973]), the Court of Appeals considered and rejected the contention that CPL article 500 violated due process of law. Although the court in Bellamy published no opinion, a search of the record shows that one of the claims presented was that as a matter of due process bail or release could only be determined after an adversary evidentiary hearing. Although in some circumstances the unanimous affirmance without opinion by the Court of Appeals of an Appellate Division upholding the constitutionality of a statute is presumed to constitute precedent on the constitutional issues raised by the appeal (Matter of Koppelman v Sunset Wine Co., 180 Misc 812 [Sup Ct, Kings County 1943]; People ex rel. Shinitsky v Hunt, 178 Misc 960 [Sup Ct, Erie County 1942]), the multiplicity of constitutional questions raised in Bellamy does not permit reliance on that ruling as to any single procedural due process claim presented.

. Despite these improvements, some of the new statutory language is extremely confusing. The first sentence of the new CPL 530.12 (1) (a) permits the court to order a defendant "to stay away from the home, school, business or place of employment of the family or household member or of any designated witness, provided that the court shall make a determination, and shall state such determination in a written decision or on the record, whether to impose a condition pursuant to this paragraph, provided further, however, that failure to make such a determination shall not affect the validity of such temporary order of protection.” As pointed out by Peter Preiser in the Supplemental Commentaries to this amendment (McKinney’s Cons Laws of NY, Book 11A, CPL 530.12, 1989 Pocket Part, at 7), the purpose of the amendment was to encourage the use of orders of exclusion, but the language of the section "lends itself to an interpretation that is just the opposite of the one intended.” It is hoped that another clarifying amendment will soon be enacted by the Legislature.