OPINION OF THE COURT
Susan T. Kluewer, J.
The People’s application for a temporary order of protection is denied.
Defendant, who is 18 years old, presently stands accused of endangering the welfare of a child (Penal Law § 260.10 [1]) by engaging in sexual relations with the “victim.” The “child” *614 involved is defendant’s 16-year-old girlfriend, whom I shall call Ms. Jones. Ms. Jones is pregnant with defendant’s child. The complainant in this case (see CPL 100.15 [1]) is Ms. Jones’ mother. Defendant was originally charged with, and apparently arraigned on, a charge of sexual abuse in the third degree, a class B misdemeanor. Because defendant has a dispositive affirmative defense to that charge (see Penal Law § 130.55), the original accusatory instrument was dismissed (see CPL 170.30 [1] [fl). The People thus filed the information underlying this prosecution. At arraignment on the class A misdemeanor with which defendant is now charged, the court (Fairgrieve, J.) issued a “stay away” order of protection of limited duration and set the matter down for a hearing to determine whether a temporary order should be issued to cover the entire pendency of this action. After conducting that hearing, which included testimony from both of Ms. Jones’ parents and, over the People’s objection, from Ms. Jones, I conclude that no order of protection should be issued here.
According to the evidence adduced at the hearing, Ms. Jones, who until recently resided with her parents and her twin sister, has been rebellious since the age of 11, and has been warned since that age that if she ever got pregnant, she would be thrown out of the house. Ms. Jones and defendant began dating — and having sexual relations — when she was 15 and he was 17. Defendant was originally welcome in the Jones household and was invited to family events. Mrs. Jones, who obviously had no knowledge of her daughter’s sexual activity, testified that she initially felt sorry for defendant because he has no family. She also testified that defendant and her daughter sometimes fought, even as she acknowledged, however reluctantly, that she had no knowledge of defendant’s ever being physically or verbally abusive toward Ms. Jones.
On or about August 4, 2001, Mr. and Mrs. Jones learned, through a relative, of their daughter’s pregnancy. On August 4, 2001, defendant was arrested on an unrelated charge, in satisfaction of which he has already pleaded guilty and for which he has received a “no jail” commitment from another judge of this court. Upon defendant’s arrest on the unrelated charge, Ms. Jones presented herself at the police station, and evidently made a scene. I infer that Mr. and Mrs. Jones were called and they thus drove to the police station to take Ms. Jones home. On the way, they decided to “press charges” against defendant themselves.
At the police station, Mr. and Mrs. Jones confronted their daughter about her pregnancy. Ms. Jones also then learned of *615 her parents’ intention to have defendant arrested. Already-upset about defendant’s arrest on another charge, Ms. Jones became, according to her parents, more angry, even less in control, and was threatening to them and to herself. Mr. Jones testified that his daughter “was not capable of staying at our house.” He and his wife thus took their daughter, first to Nassau County Medical Center for observation, where she stayed for several days, then to a relative’s, and finally, to a home run by Catholic Charities for teenagers who are pregnant, where Ms. Jones now resides. Mr. and Mrs. Jones want an order of protection directing defendant to stay away from their daughter, wherever she is, and to refrain from communicating with her, or alternatively, that he be allowed only telephone and other such contact with her. They claim that the order is necessary because they fear for their daughter’s safety, and because she has threatened to, and they thus fear she will, “run away” with defendant.
Ms. Jones, who testified that she was “thrown out” of her parents’ home on August 4, 2001, has grown accustomed to her present living situation, which is “not as bad” as she had feared. She further testified that she has never been involved with drugs or alcohol, that her grades in school are in the “80’s,” that she loves defendant and wants to marry him, and that she has never been afraid of him. She acknowledged that she and defendant had discussed “moving,” but asserted she has no intention of “running away.” She also testified that, under the rules governing her current living situation, privileges such as telephone use must be earned, that there are regular visiting days, and that the other young women in the home can receive visits from their boyfriends. Finally, she made it very clear she did not want any order of protection.
The People urge that, given the nature of the charge, it would be “inappropriate” for defendant to have contact with the “child” he is alleged to have endangered. Citing the possibility of Ms. Jones’ and defendant’s “running away,” they also urge that the order will serve Ms. Jones’ “best interests.” Defendant, through counsel, urges that there is no proper basis for any order of protection.
CPL 530.13, among other things, authorizes a local criminal court, as a condition of release on bail or on recognizance, to issue an order of protection directing a defendant against whom a criminal action is pending to stay away from, refrain from communicating with, or refrain from engaging in harassing conduct toward the victim of the alleged crime “upon good *616 cause shown.” What constitutes “good cause,” and how thorough the hearing for demonstrating that “good cause” need be are not spelled out in the statute, but the Legislature’s intent in authorizing the issuance of orders of protection under article 530, originally limited to the protection of victims of domestic violence but now expanded to include victims of, and witnesses to, any offense, is to prevent intimidation, abuse and threats by a defendant against those involved in the accusation against him or her (see People v Meggie, 184 Misc 2d 883 [Nassau Dist Ct 2000, Gartner, J.]; People v Koertge, 182 Misc 2d 183 [Nassau Dist Ct 1998, Feichter, J.]; cf. People v Forman, 145 Misc 2d 115 [Crim Ct, NY County 1989, Gruner Gans, J.]). There is nothing in the legislative history of CPL 530.13 (see e.g. L 1981, ch 575, § 1; L 1986, ch 794, § 2) indicating that the “best interests” of a victim are to be considered when determining whether “good cause” for issuance of an order of protection exists. Indeed, it appears that a criminal court is not the place to determine whether young people on the verge of adulthood should, because of their sexual activity, be banned from seeing each other (cf. Hodgson v Minnesota, 497 US 417 [1990]; see also Griswold v Connecticut, 381 US 479 [1965]).
I am not unmindful of the concerns, fears and understandable upset of Ms. Jones’ parents. And it may generally be inappropriate for a defendant charged with violating Penal Law § 260.10 (1) to have contact with the child whom that defendant is alleged to have endangered. This is not, however, a typical case of “criminal” endangerment. Moreover, the “child” involved is herself on the path to motherhood, and she has articulated her wish that no order of protection be issued. Finally, while the People assert they are acting on Ms. Jones’ behalf, it is clear they are instead speaking for her parents, who, it appears, are trying to exert control over their daughter by having limitations imposed on her boyfriend. Use of CPL 530.13 for this purpose is inappropriate. Since there is absolutely no indication that defendant has threatened, intimidated or physically or mentally abused anyone involved in this case, I deny the People’s application.