[891 NYS2d 602]

In the Matter of CHARMAINE C., Petitioner, v ELIZABETH C., Respondent.

Family Court, Bronx County, October 13, 2009

APPEARANCES OF COUNSEL

*Eugene McGloin* for petitioner. *Michelle Stevenson* for respondent.

## OPINION OF THE COURT

ANDREA MASLEY, J.

The issue is whether respondent Elizabeth C. has as her primary residence XXXX XXXXX XXXXXXXXX, Bronx, New York (the Apartment). If it is, then she is entitled to an immediate hearing before she can be excluded from it.

On July 23, 2009, petitioner Charmaine C. filed a family offense petition against her sister Elizabeth seeking an order of protection under article 8 of the Family Court Act. The court has jurisdiction under Family Court Act § 812 (1) (a) on the grounds that the parties are siblings. In the petition, Charmaine describes a family property dispute that has escalated into threats of violence, intimidation and property damage. The court issued an ex parte order that provided in part that Elizabeth was to stay away from Charmaine and her home.

According to the affidavit of service, Elizabeth was served on July 27, 2009 at 2737 Morgan Avenue, Bronx, New York at 3:25 P.M.

On the return date of August 3, 2009, Elizabeth demanded an immediate hearing. She asserts that the court's stay away order is effectively an exclusion from the Apartment which is her primary residence and thus she is entitled to an immediate hearing. On August 5, 2009, the court held a hearing, and both sisters, represented by counsel, testified regarding respondent's primary residence.*

Charmaine testified that she has been living at the Apartment since 2000. Since her father's death in 2007, Charmaine has been living alone at the Apartment, and has been solely responsible for the payment of utility and maintenance bills for

---

* It is undisputed that the ownership of the property is unclear as it was owned by the sisters' now-deceased parents who had 13 children. Although their father died in November 2007, nothing has been done to clarify title to the property. Nonetheless, property ownership is irrelevant to the issue of exclusion. The court's only concern is whether the parties and children, if any, are safe. (Family Ct Act § 842.)

the property. Charmaine testified that Elizabeth resides at 2737 Morgan Avenue, Bronx, New York 10469. Although Charmaine has not been in contact with her sister since May 9, 2009, when Elizabeth arrived at the Apartment with the police and demanded a set of keys to the Apartment, she believes that Elizabeth continues to reside on Morgan Avenue because Charmaine saw her car parked there. Charmaine also testified that Elizabeth maintained no belongings in the Apartment.

Elizabeth testified that the Apartment has been her residence since her birth in 1979. Despite having had other apartments throughout New York City during that time, Elizabeth testified that she has always kept her clothing and furniture at the Apartment, and held that residence out to be her primary residence. Elizabeth testified that she has contributed cash to the general maintenance and utility fees for the Apartment, but failed to obtain receipts because of the trust usually associated with family relationships. Elizabeth testified that the Apartment has been her place of exclusive residence for the previous four or five months because the apartment on Morgan Avenue is in foreclosure. She had been renting apartments throughout the city in an effort to facilitate transporting her daughter to and from school. She would spend the weekends at the Apartment and the weekdays at the other apartments. Elizabeth testified that her last such secondary apartment was at 2737 Morgan Avenue. She testified that her driver's license listed the Apartment as her address. However, she received very little mail at the Apartment because she maintains a U.S. post office box for the purpose of receiving "important" documents which became necessary when someone in the building stole her mail. Respondent testified that "important" documents include, among other things, bank statements, tax returns, her daughter's school-related correspondence, and magazines.

As evidence that her mail is tampered with, Elizabeth entered into evidence a document dated July 16, 2009 addressed to her at the Apartment entitled "Failure to Respond." It states it was sent after Elizabeth failed to reply to two previous juror qualification questionnaires sent to her at the Apartment dated March 16 and May 29, 2009. Handwritten on the front of the envelope was "Not at this address—Return." Elizabeth recognized the writing on the envelope as that of her sister. Respondent had only become aware of the letter after being called by a neighbor that the letter was on the floor of the hallway at the Apartment. Elizabeth concluded that petitioner frequently discards respon-

dent's mail which explains why the juror questionnaires had gone unanswered.

A person's interest in their home is substantial. Whether a person rents or owns a home, that property right is sufficient to invoke due process protection. (*People v Garland*, 69 NY2d 144 [1987].) A party may not be deprived of that property right without a hearing. (*People v Forman*, 145 Misc 2d 115, 126 [Crim Ct, NY County 1989] [after allegedly punching his wife in the face respondent was excluded from the home].) Extraordinary circumstances and an overriding state interest in protecting victims of domestic violence allow for exclusion with a prompt hearing to follow. (*Id.*) In cases where domestic violence is alleged, "the state's extraordinary interest in protecting victims of domestic violence from actual or threatened injury . . . justifies the use of immediate measures to stop the violence." (2 Breger, Elkins and Fosbinder, New York Law of Domestic Violence § 6:27, at 509 [2d ed 2007].) In criminal cases, exclusion is authorized (CPL 530.12 [1] [a]) to protect the complaining witness from intimidation or injury. (*People ex rel. Klein v Krueger*, 25 NY2d 497 [1969].) Such an order does not preclude a party from initiating proceedings in Surrogate's Court, housing court or Supreme Court to resolve issues of property ownership. (*People v Carrington*, 12 Misc 3d 1189[A], 2006 NY Slip Op 51499[U], *3 [2006].) Likewise, an exclusion order before or after a hearing does not constitute a determination of property ownership. (*Matter of Borkowski v Borkowski*, 38 AD2d 752 [2d Dept 1972].) The only issue before the Family Court when a party seeks exclusion is whether the parties and children are safe. (Family Ct Act § 842.)

The Family Court Act authorizes the court to issue temporary orders of protection. (Family Ct Act § 828.) Family Court Act § 842 authorizes stay away orders. However, the term "exclusion" does not appear in Family Court Act article 8. Nevertheless, a distinction between an exclusion and a stay away order has developed in Family Court practice. A party can only be excluded when he/she resides in the premises. Otherwise, it is a stay away order. When a party is excluded he/she is entitled to an immediate hearing. That right arises from his/her property right. The question is when does that property right innure? As the Family Court Act is silent on that issue, the court is compelled to turn to housing law.

In housing court, one is entitled to a hearing if he/she has resided in the property for at least 30 days. (Administrative

Code of City of NY § 26-521.) Here, there is no proof that Elizabeth has resided in the Apartment for 30 days. Therefore, Elizabeth is not entitled to an exclusion hearing.

Rather, Elizabeth contends that she is entitled to a hearing because the Apartment is her primary residence. Apparently, Elizabeth is relying on the Rent Stabilization Code which provides that a landlord may not refuse to renew a lease if the apartment is the tenant's primary residence. (9 NYCRR 2520.6.) There is no dispute that the Apartment is not rent stabilized. Nonetheless, even if the court were to rely on the Rent Stabilization Code, the Apartment is not Elizabeth's primary residence as a matter of law.

There is no single determinative factor of primary residence. Rather, there is a nonexhaustive list of factors to look to including:

"(1) specification . . . of an [alternative] address . . . [for] tax return[s], motor vehicle registration[s], driver's license registration[s], or other document[s] filed with a public agency;

"(2) use by an occupant of an address other than such housing accommodation as a voting address;

"(3) occupancy of the housing accommodation for an aggregate of less than 183 days in the most recent calendar year, except temporary periods of relocation pursuant to section 2523.5 (b) (2) of this Title; and

"(4) subletting of the housing accommodation." (Rent Stabilization Code [9 NYCRR] § 2520.6 [u]).

Courts may weigh other factors not included in the Code which demonstrate an ongoing, substantial, physical nexus with the premises for actual living purposes. (*See St Owner LP v Bonczek*, 19 Misc 3d 1139[A], 2007 NY Slip Op 52556[U] [2007]; *see Emay Props. Corp. v Norton*, 136 Misc 2d 127, 128-129 [1st Dept 1987].) Helpful documents include: telephone records, bank statements, and mail addressed to the respondent at the address are "traditional indicia of primary residence," that can establish a period of residency. (*St Owner LP v Bonczek*, 2007 NY Slip Op 52556[U], *2.)

The court finds Elizabeth's evidence and testimony inconsistent and insufficient to establish the Apartment as her primary residence as a matter of law. For example, respondent testified that she has resided exclusively at the Apartment during the most recent four or five months because the apartment on Morgan Avenue is in foreclosure. Yet, respondent was served on

Morgan Avenue in July. The court is also troubled by the fact that respondent was not home at the Apartment on March 16, May 29 or July 16, 2009 to receive the juror summonses, yet these are the four or five months during which she allegedly made the Apartment her primary residence. There is no evidence that respondent even has a key to the mailbox. Indeed, in May 2009, Elizabeth came to the Apartment with the police to get a key to the Apartment door from Charmaine. Likewise, there is no evidence that Elizabeth was forced to move out of the Morgan Avenue apartment, and no proof of eviction or that her lease expired.

Respondent testified that she has been filing tax returns with an address other than the Apartment for at least the last several years. However, her driver's license was registered at the Apartment. Her driver's license registration would be compelling evidence of primary residence except that she was not present on three different dates to accept mail during the relevant period when she claimed to live there exclusively.

Even if the court found credible respondent's testimony that she resided at the Apartment exclusively for five months, which it does not, this would be less than the requisite 183 days under the Rent Stabilization Code. Indeed, Elizabeth was unable to offer any evidence as to the number of days spent at the Apartment—explaining only in vague terms that she often spent weekends at the Apartment. Such a short period of domicile, immediately prior to a hearing regarding residency, coupled with a significant absence from the residence in the months prior, is insufficient to establish the requisite "ongoing, substantial physical nexus with the controlled premises for actual living purposes." (*See Berwick Land Corp. v Mucelli*, 249 AD2d 18, 18 [1st Dept 1998] [holding that "despite residing in the subject premises for three or four months prior to service of the termination notice, respondent tenant had not resided . . . there for the 16 months of the most recent 24 month renewal period," and therefore had not established the requisite type of ongoing physical nexus required to claim primary residence at that location (*id.*)].)

Accordingly, it is ordered that the Apartment is not Elizabeth's primary residence and thus she is not entitled to an immediate hearing on exclusion; and it is further ordered that the parties shall appear for trial on the family offense petitions.