OPINION OF THE COURT
Bruce McM. Wright, J.
Petitioners commenced this CPLR article 78 proceeding (although the title does not say it is such) to seek judicial review and nullification of a ruling made by the respondent.
Petitioners are administrators of premises 1921-1937 Adam Clayton Powell, Jr. Boulevard, a once-proud, block-long building with an interior courtyard and garden. Those now resident there were barred by their race in other years. The apartments, now fallen upon evil days, still retain vestiges of luxury and such amenities as fireplaces, those necessities in ancient times that .are now a mark of affluent adornment. Petitioners occupy their office by virtue of a Civil Court order. The tenant of apartment 7-G-2, unhappy over the quality of services, a leak and the need for painting, filed a complaint with the respondent and it retained jurisdiction and found that the complained of conditions offended the Rent Stabilization" Law and Code.
*742 Petitioners elected not to oppose the complaint and respondent deemed its text to be admitted and, in the opinion here sought to be undone, petitioners were ordered to correct the conditions. Failure to comply with the order would result in the 7-A administrators being expelled from the association. Rather than comply, they have come here to challenge respondent’s jurisdiction. They assert, in effect, that they may not serve two masters, both respondent and the Civil Court. They argue that their allegiance must be to the supervisory power of the court that appointed them. If respondent is allowed to review the priorities established by the Civil Court, the court would be powerless to carry out its functions under the Real Property Actions and Proceedings Law, pursuant to which they were appointed, it is urged.
Respondent, jealous of its prerogatives, contends that 7-A administrators are subject to its powers and not exempt from the reach of the Rent Stabilization Law and Code. Its jurisdiction, it concludes, is well asserted to command compliance with its order, or suffer expulsion from the association.
RPAPL article 7-A was enacted by the State Legislature in 1965 to address problems faced by multiple dwelling tenants in New York City, where conditions exist that endanger health, life or safety (L 1965, ch 909, § 1). Under the law, one third or more of tenants in such a building may petition to have rents channeled into court to be used exclusively for repairs and improvements needed to remedy complained of conditions (RPAPL 770 et seq.).
The aim and purpose of the law was to ensure appointment of administrators, qua trustees of the court, for residential buildings where services and conditions have been found to be deteriorated and far below a level maintained prior to May 31, 1968.
Most 7-A administrators have a thankless task. By the time they arrive on the scene, deterioration has had its way and tenants are hostile, disconsolate and cynical — all too often, with good reason. Faced by myriad defective conditions and a wide-ranging constellation of bitter reactions, administrators must exercise wisdom and insight in deciding what emergencies must first be coped with as they *743 consider their all too meager means. Many tenants, under such conditions, transfer their hatred of the displaced landlord to the administrators. Some conduct rent strikes and must be persuaded of the good faith of administrators.
Necessary repairs usually embrace a new roof, repairs of cascading leaks and repairs to the sewage system, as was the case here. Working closely with both tenants and the court, administrators must establish a calendar of priorities. Cosmetic repairs, such as painting, and sometimes, plastering, must be relegated to the lowest of priorities.
Despite these caveats, respondent insists that administrators should be compelled to make all of the kinds of repairs that the apartment 7-G-2 needs. Administrators, from the viewpoint of respondent, fall within the definition of “owner”, as enunciated in the Code of the Rent Stabilization Association of New York City, Inc. Ergo: Administrators are subject to the jurisdiction of respondent.
Subdivision (h) of section 2 of the Code of the Rent Stabilization Association of New York City, Inc., says that “[a]n owner, lessor, sublessor, sponsor of a condominium or cooperative, assignee, or other person receiving or entitled to receive rent for the use and occupancy of any dwelling unit, or an agent of any of the foregoing” are proper targets of respondent’s regulatory powers.
Of course, a 7-A administrator does collect rents. That, indeed, is one of his or her prime functions, but an administrator is not “entitled to receive rent.” On the contrary, an administrator collects rents, but must use that money with discretionary wisdom, “subject to the court’s direction” (RPAPL 776, subd b), to remedy emergency conditions as well as other deteriorated conditions, if the money permits. Administrators have no ownership rights in the rents collected and they do not stand in the position of any of the named persons in respondent’s statute (see, generally, HPD City of N. Y. v Sartor, NYLJ, Nov. 25,1983, p 12, col 1 [App Term, 1st Dept]; Salzman v Brown, 67 Misc 2d 101).
Thus, subjecting administrators to the whim of respondent would not do anything other than impose upon them what the court has already imposed as a duty, to wit, correcting deteriorated conditions and coping with emergencies so as to make residential units habitable. *744 Such double supervision, with the inevitable competition of priorities, could only induce administrators to resign, leaving a vacuum in administration of a building where a landlord had already defaulted. Only the tenants could suffer then, a consequence never intended either by respondent’s creation or the laws under which administrators operate.
RPAPL article 7-A is a remedial statute and must be construed liberally to effectuate its aims and objectives (Himmel v Chase Manhattan Bank, 47 Misc 2d 93). The statute could never be made to work properly with competing agencies construing how limited funds should be disbursed. If administrators are to be allowed to carry out their functions with the funds available from collected rents, they must have the on-the-site authority to establish priorities without untoward interference.
The courts have consistently held that RPAPL article 7-A must be given priority when collision with other existing laws seems imminent. Other statutes designed to assist tenants and their quality of residential life must not be applied in such a way that the objectives of 7-A administrators will be jeopardized or defeated. In Salzman v Brown (supra) for example, the court found that the Spiegel Act (Social Services Law, § 143-b) that provides that tenants receiving funds from the Department of Social Services are not required to pay rent when dangerous and hazardous conditions exist in their apartments, does not apply to premises managed by 7-A administrators appointed by court order. In so concluding, the court reasoned that, to permit a tenant an abatement of rent would be to cast the administrator in the same posture as the offending landlord replaced by the administrator, and would render RPAPL article 7-A meaningless.
In HPD City of N. Y. v Sartor (supra), the Appellate Term held that a tenant may not assert the warranty of habitability as a defense to an administrator’s claim for rent. Following Salzman (67 Misc 2d 101, supra) the court reasoned that withholding rent from an administrator would serve no useful purpose, since it is with collected rents that an administrator must discharge the good-faith duty that the landlord failed to do.
*745 The present ruling does not leave tenants in RPAPL article 7-A managed buildings without recourse. They may always apply to the court that appointed the administrator and urge review of the administrator’s performance. The court that appointed may also remove and tenants may always seek a review of priorities if they believe the administrator is discriminating, or acting out of other than impartial and objective considerations.
For all of the foregoing reasons, it is found that the challenge confronting the authority of the respondent in the case at bar is well made and the petition and application of the petitioners must be granted. The opinion No. 25,309, here protested by petitioners, is declared null and void.