OPINION OF THE COURT
Lewis R. Friedman, J.
These consolidated motions present for decision several related issues of first impression surrounding one central theme: what is the responsibility of an owner of a multiple *257 dwelling after the court has appointed an administrator for the property pursuant to RPAPL article 7-A?
PROCEDURAL HISTORY
An administrator for the building had been appointed by Judge George pursuant to RPAPL article 7-A because of the hundreds of violations of record which the appointing court found to be "dangerous to life, health or safety” (RPAPL 770 [1]). Rudd Lawrence (the administrator) was appointed as successor 7-A administrator in 1982; Valley Company (the owner) purchased the fee in 1983. The administrator has been operating the building under the court’s general direction.
Several apartments became vacant. Since the owner wanted those apartments to remain vacant, it obtained an order from Judge George to permit their continued vacancy on condition that it pay rent to the administrator for those apartments. The owner pays the real estate taxes. The rent roll in the building, even with payments for vacant apartments, is barely enough to cover operating expenses.
The administrator has brought this nonpayment proceeding; the tenant alleges as a defense and counterclaim a breach of the warranty of habitability (Real Property Law § 235-b) and seeks damages of $3,500. The administrator has moved to join Valley Company as a third-party respondent in the nonpayment proceeding on the theory that, as owner, Valley Company is ultimately liable for the relief sought by respondent— the abatement of rent and payment of damages.
The administrator received a summons, returnable in the New York City Criminal Court, issued by the New York City Department of Buildings (DOB) for violations of Administrative Code of the City of New York §§ C26-85.5, C26-86.5 (a); and § C26-105.1 as result of cracks in the front brick wall of the building. The administrator moves for directions or instructions. The Department of Housing Preservation and Development (DHPD) which originally brought the RPAPL article 7-A proceeding, moves to require Valley Company (previously added as a party to the 7-A proceeding) to correct the DOB violations. DOB expresses no position on who should do the repairs but simply seeks to have the violation removed.
THE STRUCTURE OF RPAPL ARTICLE 7-A
RPAPL article 7-A was added in 1965 (L 1965, ch 909) to permit DHPD, or one third or more of the tenants, to bring a *258 proceeding for the appointment of an administrator. (See, Matter of Himmel v Chase Manhattan Bank, 47 Misc 2d 93 [Civ Ct, NY County 1965].) That appointment is based on the finding of "a lack of heat or of running water or of light or of electricity or of adequate sewage disposal facilities, or any other condition dangerous to life, health or safety” (RPAPL 770 [1]; see, Maresca v 167 Bleecker, 121 Misc 2d 846, 849 [Civ Ct, NY County 1983]).
The administrator is authorized "to demand, collect and receive the rents from the tenants” and to commence appropriate proceedings for nonpayment. (RPAPL 778 [1].) The collection of rent is, of course, the first priority of the administrator (Matter of Foster v New York City Conciliation & Appeals Bd., 124 Misc 2d 741, 743 [Sup Ct, NY County 1984], affd 116 AD2d 1047 [1st Dept 1986]) for it is out of the fund created by the rents that the true work of the administrator is to be done. The administrator "is authorized and empowered in accordance with the direction of the court, to order the necessary materials, labor and services to remove or remedy the conditions specified in the judgment, and to make disbursements in payment thereof’ (RPAPL 778 [1]). The administrator also performs all ordinary maintenance and repairs to the premises. (RPAPL 778 [1] [a]; Matter of Levine v State Div. of Hous. & Community Renewal, 126 Misc 2d 531, 534 [Sup Ct, NY County 1984].)
The substance of these provisions is to put the administrator in the position of an owner for some purposes. That is, the administrator takes the rents which are collected and uses them to do the repairs which the owner has neglected or refused to do. The administrator does not, however, fully stand in the shoes of the owner. The administrator has only a secondary liability to pay real estate taxes (and then only for arrears). The administrator may not pay any mortgages or liens other than for emergency repair liens filed by New York City. The administrator is liable for damages as an owner would be but "shall not have any liability in his personal capacity.” (RPAPL 778 [6].) The administrator’s position is, therefore, a limited form of "ownership” adapted to the emergency conditions which necessitate the appointment.
There is nothing in RPAPL article 7-A which describes the rights and duties of the fee owner after an administrator has been appointed. The order of appointment prevents the owner from interfering with the administrator’s carrying out his duties but imposes no other restrictions. It does not prevent *259 an owner from making repairs to the building so long as the owner does not interfere with the administrator’s operation of the building.
The obligation is on the administrator both to perform routine repairs and to remove dangerous conditions. The Housing Maintenance Code (HMC) (Administrative Code, ch 26, tit D) requires that an "owner” keep the building in good repair. (Administrative Code § D26-10.01 [a]; see, Multiple Dwelling Law § 78.) There is no question but that Valley Company, as fee owner, is an "owner” under the law. "The term 'owner’ shall mean and include the owner or owners of the freehold of the premises or lesser estate therein” (Multiple Dwelling Law § 4 [44]; Administrative Code § D26-1.07 [a] [45]). It is also clear that the administrator is an "owner”. It does not matter whether an article 7-A administrator is specifically included in the list of persons declared to be an "owner”; there can be no doubt that an article 7-A administrator is "directly or indirectly in control of a dwelling.” (Multiple Dwelling Law § 4 [44]; Administrative Code § D26-1.07 [a] [45].) The Multiple Dwelling Law and HMC were drafted to apply to the fee owner and any other person having any actual control of the premises.
The conclusion is inescapable that the administrator and Valley Company have each been given the statutory responsibility to repair conditions at the premises. That responsibility includes the conditions alleged by the tenant in the nonpayment proceeding as well as the conditions underlying the DOB violation. The questions remaining to be resolved are how those responsibilities should be exercised and what are the consequences of that exercise in the two cases involved.
THE NONPAYMENT PROCEEDING
The administrator in the exercise of his responsibilities seeks to collect unpaid rent from Mr. Martin. There is no question but that there are violations at the premises which would give rise to an abatement of rent for a breach of the warranty of habitability. Indeed, given the definitions of RPAPL 770 (1) it would be difficult to imagine a building with an article 7-A administrator where serious rent impairing violations do not exist. There are strong policy reasons which would support the view that rent abatements should not be granted in article 7-A buildings. (See, Department of Hous. Preservation & Dev. v Sartor, NYLJ, Nov. 25, 1983, p 12, col 1 *260 [App Term, 1st Dept].) Clearly, the property cannot be improved and conditions corrected unless the administrator has adequate resources. An RPAPL article 7-A building where abatements are allowed is in a catch-22 situation — reduced rentals will lead only to reduced services and, inevitably, still further reductions in the rent. Yet, that is the law.
The Appellate Division decision in Sartor held that Real Property Law § 235-b, the warranty of habitability statute, by its terms, applies to all landlords, including 7-A administrators. (Department of Hous. Preservation & Dev. v Sartor, 109 AD2d 665 [1st Dept 1985].) That opinion correctly analyzes the statute and the developing body of law applying the warranty of habitability to all residential property. (See, Suarez v River-cross Tenants’ Corp., 107 Misc 2d 135 [App Term, 1st Dept 1981] [cooperative housing]; City of New York v Rodriguez, 117 Misc 2d 986 [App Term, 1st Dept 1983] [city owned buildings].) The policy considerations were not fully explored by the court in the face of its statutory analysis. The question of who was financially liable to the tenant for the breach of the warranty of habitability, the owner or administrator, was simply not addressed in Sartor.
Valley Company purchased the property long after the administrator was appointed. That owner’s interest is substantial. Valley Company has sought and obtained an order allowing it to pay rent for vacant apartments in order to keep them vacant for Valley Company’s eventual use. The property has been kept out of mortgage and in rem tax foreclosure proceedings by Valley Company’s payments. Its ownership interest is a valuable one which, it appears, it is in a position to protect. In a balancing between the owner and the administrator, the owner is far better equipped to pay for the failure of its building to provide decent, safe housing for the tenants than is the administrator. The owner has the resources and strong equity interest in the building for which it is responsible.
This court can permit third-party practice in a summary proceeding. (CPLR 401.) For example, the courts have permitted the Department of Social Services to be impleaded where it might be liable to the owner petitioner for the rent. (Sessa v Blakney, 71 Misc 2d 432, 433-434 [City Ct 1972].) Here the situation is substantially the same. It would be desirable for all parties to litigate their claims in one forum at one time. Since the administrator brought this summary proceeding, the delay caused by third-party practice does not harm any other party.
*261 In the case at bar there is at least a prima facie showing by the administrator that joining the owner as a third-party defendant is not a futile act that would prejudice the tenant. That is, the owner has not abandoned the property and disappeared; the owner has resources from which any judgment for damages could be paid.
Third-party practice should be allowed here. This will allow the court to determine, after trial, the ultimate allocation of responsibility for the conditions giving rise to the tenant’s complaints. The statutory purposes of Real Property Law § 235-b will be met; tenants will not "pay for housing which they are not receiving.” (Department of Hous. Preservation & Dev. v Sartor, 109 AD2d, at p 667.) Article 7-A administrators will not have their income stream reduced while money is needed for repairs. The owner will meet its continuing obligations to maintain the property without interfering with the administrator’s operation of the building.
THE DEPARTMENT OF BUILDINGS VIOLATION
The DOB violation was filed on the theory that the administrator is an "owner” of the property. The Building Code provides that "[t]he owner shall be responsible at all times for the safe maintenance of the building and its facilities.” (Administrative Code § C26-105.2.) While it may be argued that the administrator is an "owner,” there are countervailing reasons in the RPAPL to exonerate an administrator from criminal liability.
The administrator is responsible for curing the dangerous conditions at the premises solely "in accordance with the direction of the court” (RPAPL 778 [1]). It follows that repairs which are to be made must be pursuant to the order of appointment or a further direction of the appointing court. Indeed, the order appointing Lawrence specifically requires him to apply to the appointing court, on notice, "for further instructions and authority” if "emergency conditions arise during the duration of this order.” The DOB violation seeks to use the punitive criminal process to have the administrator perform certain repairs without a prior direction from the appointing court. That is contrary to established law and policy.
The general rule is that fiduciaries may not be sued without permission from the appointing court. (Copeland v Salomon, 56 NY2d 222 [1982].) That rule even applies to foreclosure *262 receivers who are the subject of DHPD heat and hot water orders. (Independence Sav. Bank v Triz Realty Corp., 100 AD2d 613 [2d Dept 1984].) The rule is, therefore, well established that DOB cannot proceed against a 7-A administrator without the permission of the appointing court.
The strong public policy which underlies the enactment of RPAPL article 7-A places the control of a building which has serious conditions dangerous to life, health and safety in the hands of the court-appointed and court-supervised administrator. Obviously a single court’s supervision makes the most sense. RPAPL article 7-A is a powerful remedy, carefully applied to achieve its goal — safe housing. It must be given priority over other regulatory statutes in order to achieve its goal. (Matter of Foster v New York City Conciliation & Appeals Bd., supra; Matter of Levine v State Div. of Hous. & Community Renewal, supra.) The statute must be liberally applied to achieve its remedial purposes. (Matter of Himmel v Chase Manhattan Bank, supra; Matter of Foster v New York City Conciliation & Appeals Bd., supra.)
DOB is, of course, not powerless to obtain correction of the condition at issue. It may appear before this court to seek an order directing the administrator to act to remove the violation; if he fails to follow directions, DOB could seek his removal and replacement. DOB may not, however, merely seek to impose penalties on the administrator who, in any event, is not personally liable. (RPAPL 778 [6].)
Valley Company is obviously an owner of the property. It therefore has an owner’s responsibility under the Building Code. Valley Company, which has a valuable asset in the building, should be responsible for the correction of the serious condition at the property. Valley Company’s argument that it has never owned the property free of article 7-A administration is beside the point; it purchased the property with full knowledge of the RPAPL article 7-A proceeding. Its purchase was obviously based on the possibility of substantial profit notwithstanding the article 7-A administration. It takes the property and the possibility of repairs as part of the total economic package.
The factual issue of the cost of the repair and the financial ability of the administrator or Valley Company to afford it can, of course, only be resolved at a trial.
CONCLUSION
The motion to add Valley Company as a third-party respon *263 dent in the nonpayment action is granted. The motions by the administrator and DHPD are granted to the extent that a hearing will be held to determine whether the administrator should do the repair called for in the DOB violation. Until the hearing the administrator is prohibited from taking any action with regard to the violation except to defend the Criminal Court action.