*485 OPINION OF THE COURT
Joseph E. Capella, J.
On October 4, 2004, the petitioner, Department of Housing Preservation and Development of the City of New York (HPD), commenced the instant Housing Part proceeding against the respondents Harriet Thomas and Living Waters Realty Inc., the managing agent and owner, respectively (collectively prior owners), of the subject premises at that time. The prior owners appeared by counsel and interposed an answer on October 19, 2004. The parties entered into a consent order dated December 21, 2004 whereby the prior owners agreed to correct 149 violations listed on an HPD computer printout dated September 17, 2004, which was annexed to the consent order, as follows: 31 violations classified as “C” (immediately hazardous) within eight days; 96 violations classified as “B” (hazardous) within 45 days; and 22 violations classified as “A” (nonhazardous) within 90 days. The parties settled the petitioner’s civil penalties claim for $1,000 on the condition that the prior owners paid said amount by February 1, 2005, and, upon failure to timely pay, the petitioner could restore for a monetary judgment in the amount of $5,000.
Pursuant to a deed recorded October 7, 2005, Living Waters transferred ownership of the subject premises to Meyer Adler on August 11, 2005, and, pursuant to a deed recorded on November 4, 2005, Adler then transferred ownership to 59 West 128 Holding, LLC (Adler and 59 West hereinafter collectively referred to as current owners). On July 20, 2006, the petitioner brought the instant motion seeking civil and criminal contempt, and additional civil penalties against the prior owners and the current owners based upon their alleged failure to comply with the consent order. On October 4, 2006, an order to show cause by counsel for the prior owners seeking to withdraw was granted on default. The proceeding was adjourned to October 25, 2006 for the prior owners to obtain substitute counsel.[1] The prior owners, however, have not appeared to oppose the instant motion by the petitioner. On the other hand, the current owners, who have not been made parties to this proceeding, have cross-moved for dismissal of that portion of the petitioner’s motion which seeks relief against them. The current owners allege, inter alia, that they cannot be held in contempt of an order which they never signed.
*486 A litigant that disobeys a court’s lawful mandate may be held in civil or criminal contempt. (Judiciary Law § 753 [A] [3]; see also CPLR 5104 [enforcing a judgment or order by contempt]; Administrative Code of City of NY § 27-2124 [contempt in general]; CCA 110 [e] [granting Housing Part judges the power to punish for contempt].) Before a court may punish for civil contempt, the movant must demonstrate (1) that a lawful court order was in effect that clearly expressed an unequivocal mandate, (2) that the order was disobeyed to a reasonable certainty, (3) that the contemnor knew about the order, and (4) that the movant was prejudiced. (Matter of McCormick v Axelrod, 59 NY2d 574 [1983]; McCain v Dinkins, 84 NY2d 216 [1994].) A so-ordered stipulation constitutes a lawful court order and violation of same is punishable by civil contempt. (Ross v Congregation B’nai Abraham Mordechai, 8 Misc 3d 136[A], 2005 NY Slip Op 51224[U] [App Term, 1st Dept 2005]; Various Tenants of 446-448 W. 167th St. v New York City Dept. of Hous. Preserv. & Dev., 153 Misc 2d 221 [App Term, 1st Dept 1992], affd on majority op below 194 AD2d 311 [1st Dept 1993]; South Park Assoc. v 230 Park S. Apts., 3 Misc 3d 1111[A], 2004 NY Slip Op 50569[U] [Sup Ct, NY County 2004].) The burden of proof is on the party seeking to hold another in civil contempt (McCain, 84 NY2d 216 [1994]; Rupp-Elmasri v Elmasri, 305 AD2d 394 [2d Dept 2003]), to prove same by clear and convincing evidence. (Vujovic v Vujovic, 16 AD3d 490 [2d Dept 2005]; Green v Green, 288 AD2d 436 [2d Dept 2001].) The standard for criminal contempt parallels that of civil contempt, except the movant does not prove prejudice (Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y., 70 NY2d 233 [1987]), but must demonstrate beyond a reasonable doubt that the alleged contemnor wilfully disobeyed a court order. (People v Metropolitan Police Conference of N.Y., 231 AD2d 445 [1st Dept 1996]; Bayamon Steel Processors v Platt, 191 AD2d 249 [1st Dept 1993].)
The instant consent order delivered a clear, unequivocal mandate that the prior owners were to correct the violations listed in the inspection report dated September 17, 2004. Harriet Thomas, one of the prior owners, signed the consent order on behalf of herself and Living Waters Realty Inc., as did counsel for the prior owners; therefore, knowledge of same is not in dispute. In addition, pursuant to section 328 (3) of the Multiple Dwelling Law, in any proceeding before this part, computer-printed HPD violations and all other computerized data rele *487 vant to the enforcement of state and local housing standards are prima facie evidence of any matter stated therein, and the court must take judicial notice thereof as if same were certified as true. The HPD computer printout dated September 17, 2004 listed 149 violations, and an HPD computer printout listing the results of a reinspection that took place on October 14 and 22, 2005 is also annexed to the petitioner’s motion as exhibit B. According to the reinspection, 29 of the violations were “not corrected” and another 88 could not be verified due to lack of access. To date, neither the prior nor the current owners have certified that the aforementioned 117 (i.e., 29 plus 88) violations have been corrected. Not only is this prima facie proof that the violations were not corrected (NY City Housing Maintenance Code [Administrative Code] § 27-2115 [f] [7]), there is also a presumption that the violations continue to exist. (Id.; Department of Hous. Preserv. & Dev. of City of N.Y. v De Bona, 101 AD2d 875 [2d Dept 1984].) As 117 or 79% of the violations[2] have not been corrected, the petitioner has established to a reasonable certainty that the prior owners disobeyed the consent order.
Finally, the nature of this proceeding confirms the prejudice caused to the petitioner. The New York State Legislature created the Housing Part to hear in a single forum all disputes involving the enforcement of state and local laws for the establishment and maintenance of housing standards. (CCA 110; see also NY City Housing Maintenance Code [Administrative Code] § 27-2115 [h], [i]; Parkchester Alliance v Parkchester Apts. Co., 180 Misc 2d 548 [Civ Ct, Bronx County 1999].) The laws to be enforced include, but are not limited to, the Multiple Dwelling Law and the Housing Maintenance Code, and both statutes contain preliminary sections that reveal the legislative intent — that the housing stock of the state’s cities be preserved and all occupants be afforded safe and healthy housing. (Department of Hous. Preserv. & Dev. of City of N.Y. v Metropolitan Ave. Corp., 148 Misc 2d 956 [Civ Ct, Kings County 1990]; Schanzer v Vendome, 11 Misc 3d 1061 [A], 2006 NY Slip Op 50339[U] [Civ Ct, NY County 2006].) Despite the Civil Court’s lack of general equitable jurisdiction, section 110 (a) (4) of the New York City Civil Court Act specifically provides the Housing Part with jurisdiction to issue injunctions and restrain *488 ing orders for the enforcement of housing standards. Moreover, regardless of the relief originally sought by a party, section 110 (c) provides that the court may recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards if it believes they will be more effective to accomplish compliance or to protect and promote the public interest. The prior owners’ failure to correct 117 of the violations included in the consent order has prejudiced the petitioner (Allen v Rosenblatt, 5 Misc 3d 1032[A], 2004 NY Slip Op 51666[U] [Civ Ct, NY County 2004]), whose primary responsibility is to enforce the Housing Maintenance Code.
The petitioner has also proven beyond a reasonable doubt that the prior owners’ failure to correct the existing violations was wilful to a degree evincing criminal contempt. As stated, Harriet Thomas, one of the prior owners and the authorized agent of the other respondent, personally signed the consent order on December 21, 2004. Pursuant to the consent order, the prior owners were required to correct all “C” violations within eight days, all “B” violations within 45 days and all “A” violations within 90 days of signing of the order. The consent order also provided that the petitioner could seek civil and/or criminal contempt, and additional civil penalties upon the prior owners’ failure to comply. Hence, the prior owners had firsthand knowledge of the consequences should they fail to comply with the consent order. Two-hundred ninety days elapsed from December 21, 2004, when the consent order was signed, until the date that the prior owners transferred the property. Yet, at the time of transfer, a reinspection (i.e., Oct. 14, 2005 and Oct. 22, 2005) by HPD revealed that 117 of the violations addressed by the consent order were not corrected.[3] The prior owners’ failure to correct a substantial portion of the violations sufficiently confirms the degree of wilfulness required for criminal contempt. (N.A. Dev. Co. v Jones, 99 AD2d 238, 243 [1st Dept 1984]; see also Allen v Rosenblatt, 5 Misc 3d 1032[A], 2004 NY Slip Op 51666DJ] [Civ Ct, NY County 2004].) Therefore, that portion of the petitioner’s motion which seeks contempt and civil penalties against the prior owners is granted.
As for the current owners, the petitioner alleges that they are bound by the consent order, despite the fact that they were not parties to that agreement, because they received notice of the *489 order by virtue of a notice of pendency. However, the petitioner did not produce the notice of pendency, evidence as to its contents or that it was timely filed, or evidence as to the current owners’ knowledge of same. Given this lack of proof, the petitioner’s request for findings of contempt against the current owners is denied and the current owners’ cross motion for dismissal of same is granted.[4]
The civil penalty for each “C” violation is $150. In addition, there are daily civil penalties of $250 for each of the six “C” violations for hot water, and $125 for each of the remaining 17 “C” violations. (NY City Housing Maintenance Code [Administrative Code] § 27-2115 [a].) The civil penalty for each “B” violation is $100, plus daily civil penalties of $10 for each of the 79 “B” violations. (Id.) Pursuant to the consent order, the “C” and “B” violations were to have been corrected by December 29, 2004 and February 4, 2005, respectively. As of the date the property was transferred, August 11, 2005, 117 violations still remained uncorrected. Therefore, HPD is awarded a judgment for civil penalties against the prior owners in the amount of $971,080, calculated as follows:
(A) 6 “C” violations for heat and hot water x $150 = $ 900
224 days (Dec. 30, 2004-Aug.l0, 2005) x $250 x 6 = $336,000
(B) 17 “C” violations x $150 = $ 2,550
224 days (Dec. 30, 2004-Aug.l0, 2005) x $125 x 17 = $476,000
(C) 79 “B” violations x $100 = $ 7,900
187 days (Feb. 5, 2005-Aug.l0, 2005) x $10 x 79 = $147,730
$971,080
As for criminal contempt, it is ordered and adjudged that, pursuant to Judiciary Law § 751, each prior owner shall pay a fine of $1,000 to the petitioner, that Harriet Thomas shall be committed to the city or county jail for a definite period of 10 days, and then until such time as the $1,000 fine imposed upon her has been paid, which time shall not exceed an additional 10 days in jail (Judiciary Law § 774).
It is further ordered that a certified copy of this order shall be delivered to the Sheriff of the City of New York or the sheriff of any county within the state of New York, and such sheriff shall serve Harriet Thomas with a certified copy of this order, and such *490 sheriff shall forthwith and without further process take the body of Harriet Thomas and commit her to civil, city, or county jail in New York county, or in any adjacent county, where she shall be held for the aforesaid criminal contempt for a definite period of 10 days; and for the additional period of time not to exceed 10 days, until she has paid the aforesaid criminal contempt fine of $1,000.
Lastly, as for civil contempt, the petitioner is awarded reasonable attorney fees, costs and disbursements.

. On October 4, 2006, counsel for the prior owners served a copy of the default order with notice of entry on all parties.

. There are 194 violations listed in the reinspection report of October 22, 2005; however, only 149 from the original inspection report dated September 17, 2004 are appropriately part of this contempt motion.

. The current owners concede that they have not corrected any violations. (See Martin affirmation in support of cross motion to dismiss, dated Sept. 8, 2006, ¶ 11.)

. Since the current owners have not been made proper parties to this proceeding, the court declines to issue an order that they correct the existing violations at the subject premises.